UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINALD WILLIAMS,

               Petitioner,                          Case Number: 09-CV-14793

v.                                          HON. MARK A. GOLDSMITH

CATHERINE BAUMAN,

               Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, GRANTING IN PART AND DENYING IN PART A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

### I.  INTRODUCTION

This matter is presently before the Court on Reginald Williams' petition for a writ of habeas corpus, filed under 28 U.S.C. § 2254.  Williams, who is presently incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan, challenges his conviction for felony murder on the grounds that: (i) the trial court erred in admitting a deceased witness's preliminary exam testimony; (ii) his trial counsel was ineffective for failing to object to the admission of that testimony and in failing to present an expert on eyewitness testimony; and (iii) the trial court failed to suppress an unduly suggestive lineup.  For the reasons that follow, the Court denies habeas relief, grants in part and denies in part a certificate of appealability, and grants Petitioner leave to appeal in forma pauperis.

### II.  BACKGROUND

Williams' convictions arise from the shooting death of Waad Shaba.  Shaba was shot and killed on October 5, 2005, while working at the video store he owned in Detroit, Michigan.

City of Detroit police officer Jared Lanzon testified that he responded to a call about a robbery in progress at the City Video store on October 5, 2005, shortly before 9:00 p.m.  He spoke to two witnesses at the scene, Rubia Hayes and David Banks, and obtained descriptions of two men, a shooter and an accomplice.  David Banks described the shooter as a black male, aged 17 to 20, approximately 150 pounds.  Banks stated that the shooter was wearing a black hat and a dark-colored shirt.  Rubia Hayes stated that the accomplice was a black male, approximately 18 years old, 5'6" tall, and weighing approximately 145 pounds.  She stated that he had black hair, worn in a braid, dark-colored eyebrows, and was slim, but with wide shoulders.

City of Detroit Police Officer Leroy Huelsenbeck testified that he responded to the shooting.  Upon arriving, he found Shaba lying face-down on the floor behind the counter.  Shaba had been shot and was bleeding from his head and other parts of his body.  He observed a handgun in the victim's hand.  Officer Huelsenbeck stayed with the victim until an ambulance arrived.  Shaba later died.

Wayne County Assistant Medical Examiner John Scott Somerset testified that he performed an autopsy on the victim.  The cause of death was two gunshot wounds, one to the head and one to the leg.

Co-defendant Thomas Coleman's mother, Marie Coleman, testified that, on the night of October 5, 2005, her son arrived home sometime between 9:00 and 10:00 p.m., and told her that he had been shot.  He told her that he was involved in an argument with some boys at a gas station and they had shot him in the hand and back of the leg.  Her son was with a friend when he arrived home.  The friend was not Williams, though her son and Williams were friends for approximately three years.  Marie Coleman took her son to the hospital.

City of Detroit Police Officer Lance Newman testified that he was the officer in charge of the investigation. He interviewed Thomas Coleman at the hospital and ordered that Coleman be arrested after he was medically released. Officer Newman took a statement from Coleman on October 6, 2005.

City of Detroit Police Officer Scott Shea testified that, three days after the shooting, he responded to a report that a backpack containing bloody clothing had been found in a backyard on Stout Street, a few blocks from the video store. The backpack contained a khaki shirt, a pair of black jeans, a black and white baseball cap, and a pair of socks. Detroit Police chemist Bill Steiner testified that the beige shirt found in the backpack contained gunshot residue in the chest and abdomen area consistent with firing a gun at chest level. The shirt also had blood stains on the front and back. Forensic biologist Cathy Carr testified that genetic material retrieved from the jeans showed a 1 in 1.372 billion chance that the genetic material came for someone other than Williams. Similarly, a DNA profile she was able to obtain from the baseball cap (which contained DNA of two or more people) showed a 1 in 29.47 quadrillion likelihood that someone other than Williams was a major contributor.

Officer Shea also testified that he reviewed a surveillance tape from the video store's surveillance camera. The tape showed two men entering the store, then an exchange of gunfire, and the men then exiting the store.

Rubia Hayes testified that, at approximately 8:30 p.m., on the day of the shooting, she was at the video store. She saw two African American men enter the store. She was not able to see them clearly enough to identify their faces, but remembered one of the men was lighter-skinned than the other and the lighter-skinned man had braids.

David Banks was present during the shooting.  He testified at Williams' and Coleman's preliminary examinations.  He died prior to the trial, so his testimony from both defendants' preliminary examinations was read into the record.  Banks was in the video store on the evening of October 5, 2005.  Two African American men entered the store.  One of the men carried a gun and announced a hold up and demanded cash.  Banks testified that he was able to get a good look at the man who was carrying the gun.  He identified that person as Williams.  Banks testified at Coleman's preliminary examination that he would be able to identify the shooter (who was not Coleman) "if he were dressed like he was before."  The next day, October 20, 2005, Williams was arrested and placed in a five-person, live lineup.  Three people in the lineup wore light colored shirts while Williams and one other person wore dark shirts.  Officer Shea testified at trial that Banks identified Williams as the shooter.  At Williams' preliminary examination, Banks identified Williams as the shooter and also testified that he had picked Williams from a line-up. He stated that he recognized Williams based upon Williams' face, not his clothing.

Williams and Coleman were charged with felony murder with the predicate felony of assault with intent to rob while armed.  They were jointly tried before separate juries in Wayne County Circuit Court.  The jury convicted Williams of felony murder and assault with intent to rob while armed.  The trial court vacated Williams' conviction of intent to rob while armed.  On September 7, 2006, Williams was sentenced to life in prison.

Williams filed an appeal of right with the Michigan Court of Appeals.  He raised three claims: (i) the admission of Banks' preliminary examination testimony violated his right to confront the witnesses against him, and his counsel was ineffective for failing to object to the testimony's admission; (ii) the admission of an unduly suggestive lineup violated his due process rights; and (iii) counsel was ineffective for failing to present an expert on eyewitness testimony.

4

The Michigan Court of Appeals affirmed Williams' conviction. <u>People v. Williams</u>, No. 273054 (Mich. Ct. App. Jan. 29, 2008). Williams' application for leave to appeal to the Michigan Supreme Court was denied. <u>People v. Williams</u>, 482 Mich. 980 (Sept. 10, 2008).

Williams then filed the pending habeas petition. He raises these claims:

I.   The state court's finding that admission of Banks' preliminary examination testimony did not violate Petitioner's Constitutional right to confront the witnesses against him was unreasonable. Alternatively, his counsel was ineffective for failing to object to the admission of the testimony.

II.   The state court holding that Petitioner's attorney was not ineffective for failing to present an expert on eyewitness testimony was also unreasonable, where Petitioner's entire defense rested on challenging the statements of one gravely suspect witness who was deceased and thus could not be cross-examined.

III.   Petitioner's due process rights were violated when the trial court denied a motion to suppress an unduly suggestive lineup which featured only one other man wearing the dark clothing that the witness was convinced the shooter wore, and that man was five inches taller than Petitioner.

### III. LEGAL STANDARDS

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). As amended by the AEDPA, 28 U.S.C. §2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413). However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" Wiggins, 539 U.S. at 520-21 (citations omitted); see also Williams, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, __U.S. __, 131 S. Ct. 770, 789 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  See Williams, 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8 (2002) (emphasis is original).  "[W]hile the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." Stewart v. Erwin, 503 F. 3d 488, 493 (6th Cir. 2007).

Lastly, a federal habeas court must presume the correctness of state court factual determinations.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence.  Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.  ANALYSIS

### A.  Claim One: Banks' Preliminary Examination Testimony

In his first habeas claim, Williams argues that admission of David Banks' preliminary examination testimony both from Williams' own preliminary examination and co-defendant Thomas Coleman's preliminary examination violated his rights under the Confrontation Clause. Banks died prior to trial.  The trial court allowed the testimony from both preliminary examinations to be read to both juries.  Neither Williams' attorney nor Coleman's attorney objected to the testimony being read to both juries.  The Court finds that admission of testimony from Williams' preliminary examination did not violate the Confrontation Clause because Williams had an opportunity to cross-examine Banks at the preliminary examination.  The Court

further finds that the admission of testimony from Coleman's preliminary examination violated Williams' rights under the Confrontation Clause and that the state court's holding that it did not is an unreasonable application of Supreme Court precedent. Nevertheless, habeas relief is denied because the error was harmless.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." Pointer v. Texas, 380 U.S. 400, 403 (1965). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion." Id. at 404-05 (internal quotation omitted). The right to a trial by jury is predicated upon the belief "'that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel.'" Id. at 405 (quoting Turner v. State of Louisiana, 379 U.S. 466, 472-73 (1965)). In Crawford v. Washington, 541 U.S. 36, 68 (2004), the Supreme Court held that out-of-court statements that are testimonial in nature are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross-examination regardless of whether the trial court finds the statements to be reliable.

First, Williams argues that the admission of Banks' testimony from Williams' own preliminary examination violated his right of confrontation because defense counsel did not have the transcript from Coleman's preliminary examination, at which Banks testified, prior to Williams' preliminary examination. Defense counsel requested a continuance to allow him to

8

obtain the transcript prior to Williams' preliminary examination. The trial court denied the request, citing the facts that the transcript had not yet been prepared and the witness's poor health made delay inadvisable. Williams argues that, because he did not have the benefit of the transcript from Coleman's preliminary examination, he was unable to fully cross-examine Banks at his own preliminary examination.

> The Michigan Court of Appeals rejected this claim:
>
>> We hold that Williams had an opportunity and similar motive to develop Banks's testimony. Notwithstanding that Williams's counsel did not have access to Coleman's preliminary examination transcript before Williams's preliminary examination, Williams's counsel did have the opportunity to cross-examine Banks and raise the issue of the credibility of his identification of Williams. Specifically, in response to defense counsel's questioning, Banks admitted that the shooter wore a dark shirt and that two of the individuals in Williams's lineup, including Williams, wore dark shirts. Thus, Williams had the opportunity to cross-examine Banks with respect to the issue of identity.

Williams, 2008 WL 239648, at *2.

The Supreme Court has acknowledged that because "the purpose of the preliminary examination is only to determine whether probable cause exists to proceed to trial, defense counsel may lack adequate motivation to conduct a thorough cross-examination." Barber v. Page, 390 U.S. 719, 725 (1968). The Sixth Circuit has recognized "there is some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes." Al-Timini v. Jackson, 379 F. App'x 435, 437 (6th Cir. 2010) (citing Vasquez v. Jones, 496 F.3d 564, 577 (6th Cir. 2007) (doubting whether "the opportunity to question a witness at a preliminary examination hearing satisfies the pre-Crawford understanding of the Confrontation Clause's guarantee of an opportunity for effective cross-examination") (internal quotation marks omitted). The Sixth Circuit reasoned that, because the purpose of the preliminary examination is only to determine whether probable cause

to proceed to trial exists, defense counsel may "lack adequate motivation to conduct a thorough cross-examination . . . and may wish to avoid tipping its hand to the prosecution by revealing the lines of questioning it plans to pursue." Id.  Additionally, a preliminary hearing may occur too early in the proceedings to be useful to the defense. Id.  Nevertheless, the AEDPA constrains a federal court to grant habeas relief only if the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  The Sixth Circuit concluded in Al-Timini that no clearly established Supreme Court precedent holds that a preliminary examination fails to satisfy the Crawford standard of an opportunity for effective cross-examination. Id.  Therefore, a state court's decision that no Confrontation Clause violation occurred where a defendant had an opportunity for cross-examination at a pre-trial hearing is not a basis for habeas corpus relief.

Moreover, the fact that Williams' attorney did not have access to a transcript of Banks' testimony from Coleman's preliminary examination did not render cross-examination so ineffective that it was a Confrontation Clause violation.  "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original).  The "right to cross-examination is subject to limits imposed by the trial court in the exercise of its discretion." Dorsey v. Parke, 872 F.2d 163, 166 (6th Cir. 1989).  Defense counsel cross-examined Banks extensively at Williams' preliminary examination.  He explored ways in which the circumstances of the shooting may have compromised Banks' ability to identify Williams, including Banks' fear, the possibility that police may have suggested to Banks that one of the perpetrators was definitely present in the lineup, and the brief period Banks observed the perpetrator.  Williams fails to identify any

10

specific items for cross-examination that would have been available to defense counsel had he possession of Coleman's preliminary examination transcript. Williams' arguments supporting this claim are highly speculative and insufficient to override the trial court's concern that delaying the trial pending preparation of the transcript was unwise given Banks' poor health.

In his second Confrontation Clause claim, Williams argues that Banks' testimony from Coleman's preliminary examination should not have been read to his jury because Coleman did not have the same motive to develop Banks' testimony as Petitioner would have and because Williams did not have an opportunity to cross-examine Banks at Coleman's preliminary examination. Respondent argues that Williams had an opportunity to cross-examine Banks at Williams own preliminary examination and, therefore, was able to confront him. Respondent further argues that any error was harmless because the inconsistencies in the witness's testimony were brought out for the jury at trial, and DNA evidence linked Williams to the crime.

The Michigan Court of Appeals found that Williams and Coleman had a sufficiently similar motive to develop Banks' testimony; therefore, it concluded that it was not improper for Coleman's preliminary examination transcript to be read to Williams' jury.

However, this Court concludes that the admission of Banks' testimony from Coleman's preliminary examination before Williams' jury was a Confrontation Clause violation. Williams did not have an opportunity to cross-examine the witness, as Crawford requires. The Supreme Court has held that a "prior trial or preliminary hearing is admissible only if the defendant had an adequate opportunity to cross-examine." Crawford, 541 U.S. at 57. The Supreme Court has not expanded the "opportunity to cross-examine" requirement beyond the defendant to any other person who might have a similar motive for cross-examining a witness. Coleman's attorney owed no duty to Williams and was bound only to act in Coleman's, not Williams', best interests.

11

Because Williams did not have any opportunity to cross-examine Banks at Coleman's preliminary examination, reading that testimony to Williams' jury violated Williams' right to confront the witnesses against him under the Confrontation Clause.  The state court's finding to the contrary is an unreasonable application of Crawford.

However, the error was clearly harmless.  A violation of the Confrontation Clause is subject to harmless error analysis.  See Lilly v. Virginia, 527 U.S. 116, 140 (1999); Coy v. Iowa, 487 U.S. 1012, 1021-22 (1988); Delaware v. Van Arsdall, 475 U.S. at 681-84 (1986).  On habeas review, to determine whether an error is harmless, a court must ask whether the error "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'"  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  "To determine the effect of the error under Brecht, [the court should] consider both the impact of the improperly admitted evidence and the overall weight of the evidence presented at trial."  Peterson v. Warren, 311 F. App'x 798, 805 (6th Cir. 2009) (citing Brecht, 507 U.S. at 639).  Factors to be considered in determining whether a Confrontation Clause error was harmless include:

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).

The Michigan Court of Appeals found that Banks' testimony from Coleman's preliminary examination was substantially similar to his testimony at Williams' preliminary examination (which was properly read to the jury), thus adding little, if anything, to the evidence against Williams.  Moreover, to the extent the testimony from the two preliminary examinations

contained inconsistencies, the Michigan Court of Appeals held that that Banks' testimony from Coleman's preliminary examination actually helped the defense's case by pointing out inconsistencies in Banks' statements regarding the issue of identification:

> Banks' testimony from Coleman's preliminary examination contradicted his testimony from Williams's preliminary examination with respect to his ability to accurately identify the shooter (i.e. whether or not the identification of Williams was dependent on the color shirt he was wearing in the lineup). Williams's counsel raised this contradiction in his closing argument. Thus, the admission of the testimony at issue actually benefitted Williams because it called into question Banks's credibility. Accordingly, the admission of this testimony was harmless.

Williams, 2008 WL 239648, at *2.

The Van Arsdall factors strongly support a finding that the admission of Banks' testimony from Coleman's preliminary examination did not have a substantial impact on the jury's verdict. Banks' testimony was clearly important in the prosecution's case, but admission of Coleman's preliminary examination transcript was merely cumulative when compared with the other evidence against Williams. Moreover, as noted by the Michigan Court of Appeals, admission of the two preliminary examinations allowed the defense to highlight potential inaccuracies in Banks' identification. In addition, other evidence against Williams was very strong; Williams' DNA was found on jeans and a baseball cap, which were found in a bag that was located four blocks from the shooting. Also inside the bag was a shirt that contained Coleman's blood along with gunshot residue.

The state court's conclusion that the Confrontation Clause violation was harmless error is not clearly erroneous, nor is it contrary to, or an unreasonable application of, Supreme Court precedent or federal law. Given the strength of the evidence against Williams, the Court concludes that Banks' testimony from Coleman's preliminary examination did not have a substantial or injurious effect on the jury's verdict.

### B.  Claim Two: Ineffective Assistance of Counsel

Williams next claims that his right to the effective assistance of counsel was violated when his attorney failed to object to the introduction of Banks' testimony from Williams' and Coleman's preliminary examinations.  Williams argues that his counsel's failure to object to the introduction of this testimony fell below professional norms because the testimony provided the only identifying link between Williams and the shooting.  Williams also asserts that his counsel was ineffective in failing to call an expert witness on identification testimony.

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-part test to determine whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must show that his counsel's performance was deficient. Id. at 687.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id.  Second, the petitioner must show "that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.

To satisfy the performance prong of Strickland, a habeas petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690.  On habeas review, the court's scrutiny of counsel's performance is highly deferential. Id. at 689.  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.  The burden is on the petitioner to overcome the presumption that the challenged action was sound trial strategy. Id. at 689.  To satisfy the prejudice prong of the Strickland test, a petitioner must show "a reasonable probability that, but for counsel's

14

unprofessional errors, the result of the proceeding would have been different." Id. at 694.  To be a reasonable probability, it must be sufficient to undermine confidence in the outcome.  Id. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." Harrington, 131 S. Ct. at 792 (quoting Strickland, 466 U.S. at 693).

"The standards created by Strickland and §2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  Id. at 788 (internal and end citations omitted).   "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id.

> The Michigan Court of Appeals denied relief on this claim, stating in part:
>
> To succeed in his claim, "defendant must overcome a strong presumption that counsel's assistance constituted sound trial strategy." As noted, the admission of the testimony at issue actually benefitted, rather than prejudiced Williams. Williams's counsel argued to the jury inconsistencies revealed in Banks's testimony from both defendant's preliminary examinations. Consequently, counsel's failure to object constituted sound trial strategy, and defendant's claim is without merit.

Williams, 2008 WL 239648, at *2 n.4 (citations omitted).

The Michigan Court of Appeals' decision is neither contrary to, nor an unreasonable application of, Supreme Court precedent or the facts.  As the state court correctly notes, choosing not to object to the admission of Banks' testimony from Williams' preliminary examination constituted sound trial strategy on the part of Williams' counsel because Banks' testimony from Williams' preliminary examination was properly admitted and any objection would have been futile.  Hoffner v. Bradshaw, 622 F.3d 487, 508-09 (6th Cir. 2010) (holding that counsel is not ineffective for failing to make a meritless objection).

15

The Michigan Court of Appeals' decision that it was sound trial strategy not to object to admission of Banks' testimony from Coleman's preliminary examination is not an unreasonable conclusion.  Admission of Banks' testimony from Coleman's preliminary examination obviously would not exculpate Williams; however, counsel may have seen it as the only way to attack Banks' identification.  Williams' counsel used the two preliminary examination transcripts to show inconsistencies in Banks' identification of Williams, which was the main issue at trial.  The inconsistencies were not monumental, but counsel may have considered it his only chance at chipping away at the certainty of Banks' identification.  If counsel had objected and the trial court had properly recognized the Confrontation Clause violation, the testimony from Coleman's preliminary examination would have been excluded and counsel's only avenue for challenging the identification would have been to rely solely on the cross-examination of Banks at Williams' own preliminary examination.  Counsel's strategy may not have been perfect, but competent counsel need not be "flawless."  Harrington, __ U.S. at __, 131 S. Ct. at 791.  Based upon Banks' unavailability and the certainty with which Banks' identified Williams at Williams' own preliminary examination, Williams is unable to overcome the strong presumption that counsel's decision not to object to admission of testimony from Coleman's preliminary examination falls within the wide range of reasonable professional norms.

Williams also claims that his defense counsel was ineffective for failing to call an expert witness on the unreliability of eyewitness testimony.  Williams argues that an expert on eyewitness testimony was necessary to convince the jury of the unreliability of Banks' identification of Williams as the shooter.  Williams contends that, had an expert witness been presented, the outcome of the case would have been different because, besides Banks' testimony,

there was little evidence linking Williams to the shooting. The Michigan Court of Appeals denied relief on this claim:

> At the preliminary examination, defense counsel thoroughly cross-examined Banks regarding his ability to perceive events the night of the incident. Banks admitted that he was petrified, that he did not stare at Williams during the incident, and that he did not see Williams leave because he was on the floor. The transcript of this proceeding was read to the jury at trial. In addition, the transcript of Coleman's preliminary examination was read to the jury. As noted, Banks's testimony at Coleman's preliminary examination was inconsistent with his testimony at Williams's preliminary examination regarding his ability to identify Williams. During closing argument, defense counsel exploited this inconsistency by arguing to the jury that Banks was predisposed to identify the shooter as an individual wearing a dark shirt.
>
> In light of this, defense counsel may have reasonably concluded that "the jury would react negatively to perhaps lengthy expert testimony that it may have regarded as only stating the obvious: memories and perceptions are sometimes inaccurate." People v. Cooper, 236 Mich. App. 643; 601 NW2d 409 (1999). Consequently, defense counsel's failure to call an expert witness constituted sound trial strategy that did not deprive defendant of a substantial defense. Regardless, the identification procedure was not impermissibly suggestive, and Banks positively identified Williams at the preliminary examination. Contrary to Williams's argument, Banks's identification was not the only evidence linking Williams to this incident. On the contrary, DNA and video evidence was presented linking Williams to the scene of the crime. In light of this, defendant has failed to establish that counsel's failure to call an expert witness fell below an objective standard of reasonableness or was outcome determinative. People v. Efinger, 212 Mich. App 67, 69; 536 NW2d 809 (1995).

Williams, 2008 WL 239648, at *4.

The rejection of this claim by the Michigan Court of Appeals is neither contrary to, nor an unreasonable application of, Supreme Court precedent or federal law. Once again, Williams is unable to overcome the strong presumption that counsel rendered adequate assistance and "made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. Defense counsel may have concluded that expert testimony on eyewitness identification would have needlessly stated the obvious – that memories are sometimes inaccurate – rather than help provide Williams with a more successful defense. Although some

attorneys may have called an expert witness to testify on the subject of eyewitness identification, that is not the test for habeas review. The Supreme Court has stated that there are "countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 689. "It can be assumed that in some cases counsel would be deemed ineffective for failing to consult or rely on experts, but even that formulation is sufficiently general that state courts would have wide latitude in applying it." Harrington, __U.S.__, 131 S. Ct. 770 at 789 (2011). Williams has failed to demonstrate that his counsel's representation fell below the reasonableness standard set forth in Strickland.

In addition, Williams has not demonstrated that he suffered prejudice from his counsel's performance. Williams claims that the case against him is "non-existent" without the eyewitness identification made by Banks. But as the Michigan Court of Appeals reasonably concluded, this is factually inaccurate. In addition to Banks' identification of Williams as the shooter, the prosecution presented both video and DNA evidence linking Williams to the robbery. Furthermore, despite not having an expert testify on eyewitness identification, Williams' attorney argued mistaken identity by Banks in his closing argument. Consequently, even if Williams had demonstrated unreasonableness on the part of his trial counsel, his claim would still fail under the prejudice prong of the Strickland test. Accordingly, habeas relief is denied on this claim.

### C. Claim Three: Due Process

Finally, Williams argues that his due process rights were violated when the trial court refused to suppress identification testimony, which he argues was the product of an unduly suggestive identification procedure. The live lineup consisted of five people. Williams was

allowed to choose what type of clothing he would wear as well as where in the line-up he would stand.  Williams and one other man in the lineup wore dark shirts while the other three people wore light colored shirts.  At Thomas Coleman's preliminary examination, David Banks stated that he would be able to identify the shooter (who, he said, was not Coleman) if he were dressed similarly to the way he was dressed during the robbery.  Banks believed that the shooter was wearing a dark shirt; however, the video footage of the shooting clearly showed the shooter wearing a light colored shirt.

Williams argues that the lineup was unduly suggestive because he and one other person were the only ones wearing dark shirts like Banks (mistakenly) believed the shooter had on during the incident.  Williams also argues that the lineup was unduly suggestive because the only other person wearing a dark shirt was five inches taller than him.  Respondent contends that relief should be denied on this claim because an attorney was present at the lineup to ensure that it was fair, and Banks quickly identified the shooter.  Respondent also argues that, because Banks stated at Williams' preliminary examination that he picked out Williams from the lineup because of his face, not his clothing, it further shows that the lineup was not unduly suggestive.

"A conviction based on identification testimony that follows a pretrial identification violates the defendant's constitutional right to due process whenever the pretrial identification is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  Ledbetter v. Edwards, 35 F.3d 1062, 1070 (6th Cir. 1994).  A court must undertake a two-step analysis to determine the validity of a pretrial identification.  First, the court must determine whether the procedure was unduly suggestive.  If the court finds that the procedure was unduly suggestive, the court must then "evaluate the totality of the circumstances to determine whether the identification was nevertheless reliable."  Id.  The petitioner bears the

19

burden of showing impermissible suggestiveness.  Howard v. Bouchard, 405 F.3d 459, 469 (6th

Cir. 2005).   In examining the totality of the circumstances, courts consider several factors,

including:

> (1) the witness's opportunity to view the criminal at the time of the crime; (2) the
> witness's degree of attention at the time of the crime; (3) the accuracy of the
> witness's prior description of the defendant; (4) the witness's level of certainty
> when identifying the suspect at the confrontation; and (5) the length of time that
> has elapsed between the crime and the confrontation.

United States v. Hill, 967 F.2d 226, 230 (6th Cir. 1992) (citing Neil v. Biggers, 409 U.S. 188,

199-200 (1972)).

> The Michigan Court of Appeals held that the lineup was not impermissibly suggestive:

> There is no basis to conclude that physical differences rendered the lineup
> impermissibly suggestive. Williams was not the only lineup participant wearing a
> dark shirt. Further, after he identified Williams, Banks testified that he identified
> Williams at the lineup "[n]ot because of a dark shirt but because of an ID [sic] of
> his face, even though he did have a dark shirt on."  In light of the fact that Banks
> gave this explanation after the lineup occurred, it does not appear that Banks
> "singled out defendant because of the fact that his physical characteristics differed
> markedly from those of the other participants."

> Moreover, Banks readily identified Williams as the perpetrator within seconds of
> viewing the lineup, which was conducted only 15 days after the incident.  Though
> the other lineup participant wearing a dark shirt was several inches taller than
> defendant, Banks made no reference to Williams's height as a contributing factor
> in the identification process.  Rather, Banks recalled that he was able to get a
> good look at the shooter because he briefly glanced at Banks during the incident.
> Though "[p]hysical differences generally relate only to the weight of an
> identification and not to its admissibility," we note that, shortly after the incident,
> Banks provided a description of the shooter that was within two inches of
> Williams's height.   In light of these circumstances, the lineup was not "so
> impermissibly suggestive that it led to a substantial likelihood of
> misidentification."

Williams, 2008 WL 239648, at *3 (citations omitted).

> The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent

nor an unreasonable application of federal law or the facts.  Williams is unable to point to any

Supreme Court decision directly on point with his argument.  Williams was not required by the police, or any other authority, to wear a dark shirt during the identification procedure.  He was also allowed to choose where in the lineup he stood and an attorney was present to ensure the identification procedure was fair.  "The fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness."  Perry v. New Hampshire, __U.S.__, 132 S. Ct. 716, 728 (2012).

Furthermore, Banks' identification of Williams as the shooter is independently reliable.  Banks picked Williams out of the lineup within seconds and indicated that he identified Williams based on his face, not on his clothing.  As the Michigan Court of Appeals points out, Banks' identification of Williams as the shooter was admissible because it was independently reliable.  Although the encounter was brief, Banks testified that he was able to get a good look at the shooter and that the shooter had his full attention.  Banks was also able to give an accurate description of the shooter to the police, describing Williams' height within two inches.  Finally, because the lineup identification occurred only fifteen days after the robbery, there was a short time period between the crime and identification.  Williams is not entitled to habeas relief on this claim.

## V.  CERTIFICATE OF APPEALABILITY/LEAVE TO APPEAL IN FORMA PAUPERIS

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the application."

21

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. §2253(c)(2).   A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citation omitted).

The Court concludes that reasonable jurists could debate its conclusion on all of Williams' claims except the claim that his trial counsel was ineffective for failing to present an expert on eyewitness testimony.  Thus, the Court grants in part and denies in part a COA. Further, Williams is granted leave to appeal in forma pauperis.

## VI.  CONCLUSION

For the foregoing reasons, (1) the petition for a writ of habeas corpus is denied, (2) a COA is granted as to all claims except the claim that trial counsel was ineffective for failing to present an expert on eyewitness testimony, and (3) Petitioner is granted leave to appeal in forma pauperis.

SO ORDERED.

Dated:  March 13, 2013                         s/Mark A. Goldsmith
        Flint, Michigan                        MARK A. GOLDSMITH
                                               United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 13, 2013.

                                               s/Deborah J. Goltz
                                               DEBORAH J. GOLTZ
                                               Case Manager

22